INCORPORATED TOWN OF DECATUR, Appellee, v. J. C. GOULD,
Appellant.

MUNICIPAL CORPORATIONS: Speed of Automobiles. Municipalities may not validly regulate, by penal ordinances, the speed of automobiles on the public streets, unless warning signs are first erected at points where the corporate line crosses public highways, *with an arrow on, or in connection with, such signs,* pointing in the direction where the speed is to be reduced or changed. (Sec. 1571-m20, Code Supp., 1913.)

WEAVER, EVANS, and PRESTON, JJ., dissent.

*Appeal from Decatur District Court.*—H. K. EVANS, Judge.

JANUARY 20, 1919.

DEFENDANT was convicted of violating an ordinance of the town of Decatur, and appeals.—*Reversed.*

*Marion Woodard* and *C. W. Hoffman,* for appellant.

*Baker & Parrish,* for appellee.

STEVENS, J.—The defendant was convicted, in the mayor's court of the incorporated town of Decatur, of violating an ordinance of said town, limiting the speed of automobiles upon its streets to 10 miles per hour. Upon appeal to the district court, he was again convicted, and now appeals to this court from a judgment thereon, imposing a fine of $25 and costs. The principal contention of counsel for appellant is that the ordinance, the violation of which is charged, is invalid. The ground upon which the legality of the ordinance is challenged is that the town council did not comply with the provisions and requirements of Section 1571-m20 of the Supplement to the Code, 1913, the material portion of which is as follows:

"Except as herein otherwise provided, local authorities shall have no power to pass, enforce or maintain any ordi-

nance, rule or regulation requiring from any owner to whom this act is applicable any fee license or permit for the use of the public highways, or excluding any such owner from the free use of such public highways, excepting such driveways, speedways or roads as have been expressly set apart by law for the exclusive use of horses and light carriages or in any other way regulating motor vehicles or their speed upon or use of the public highways; and no ordinance, rule or regulation contrary or in any wise inconsistent with the provisions of this act, now in force or hereafter enacted, shall have any effect;   *   *   *   provided further, that the local authorities of cities and towns may limit by ordinance, rule or regulation the speed of motor vehicles on the public highways, such speed limitations not to be in any case less than one mile in six minutes, and the maintenance of a greater rate of speed for one eighth of a mile shall be presumptive evidence of driving at a rate of speed which is not careful and prudent; and on further condition that each city or town shall have placed conspicuously on each main public highway where the city or town line crosses the same, and on every main highway where the rate of speed changes, signs of sufficient size to be easily readable by a person using the highway, bearing the words 'City of ———,' 'Town of ———': 'Slow down to ——— miles' (the rate being inserted), and also an arrow pointing in the direction where the speed is to be reduced or changed, and also on further condition that such ordinance, rule or regulation shall fix the punishment for violation thereof, which punishment shall, during the existence of such ordinance, rule or regulation, supersede those specified in Section twenty-three [Sec. 1571-m22]."

A sign, bearing the inscription, "Decatur City, automobiles and motor vehicles slow down to 10 miles per hour," of sufficient size and easily readable, was located at the proper place on all highways entering the town. The sign

did not, however, display an arrow pointing in the direction towards which the speed was to be reduced.

It is the contention of counsel for appellant that the requirement of the statute that an arrow "pointing in the direction where the speed is to be reduced or changed" be placed upon the required signs is mandatory, and a condition which must be complied with before the power conferred by the legislature upon municipal corporations to place certain limitations upon the speed of motor vehicles within the corporate limits thereof can be exercised. It is, of course, fundamental that such corporations can exercise only such powers, and in the manner, as are delegated thereto by the legislature. Mr. Justice Dillon, in *Merriam v. Moody's Exrs.*, 25 Iowa 163, speaking for the court, said:

"In determining the question now made, it must be taken for settled law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily implied or necessarily incident to the powers expressly granted; third, those absolutely essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable; fourth, any fair doubt as to the existence of a power is resolved by the courts against the corporation—against the existence of the power."

See, also, *Logan & Sons. v. Pyne*, 43 Iowa 524; *Brooks v. Incorporated Town of Brooklyn*, 146 Iowa 136; *Farmers Tel. Co. v. Town of Washta*, 157 Iowa 447; *Town of Hedrick v. Lanz*, 170 Iowa 437; *Huston v. City of Des Moines*, 176 Iowa 455.

The legislature of this state has, by proper statutory enactment, prescribed and limited the duties and privileges of drivers of motor vehicles upon the public highways thereof. In addition thereto, it has conferred certain limited

authority upon cities and incorporated towns. The authority thus conferred is strictly defined and limited by the statute, and can be exercised only in strict conformity to legislative requirements. It will be observed that, in the opening sentence of Section 1571-m20, supra, the power of local authorities "to pass, enforce or maintain any ordinance, rule or regulation * * * or in any other way regulating motor vehicles or their speed upon or use of the public highways" is denied, except upon certain prescribed conditions. The power conferred, in the language of the statute, is:

"Provided further, that the local authorities of cities and towns may limit by ordinance, rule or regulation the speed of motor vehicles on the public highways, such speed limitations not to be in any case less than one mile in six minutes, * * * and on further condition that each city or town shall have placed conspicuously on each main public highway where the city or town line crosses the same, and on every main highway where the rate of speed changes, signs * * * and also an arrow pointing in the direction where the speed is to be reduced or changed. * * * "

The requirement of the legislature that local authorities place an arrow upon signs at highways entering cities and towns, and at points therein where the speed changes, is not a mere captious one, but is intended to serve a perfectly reasonable and legitimate purpose. It is a matter of common knowledge that the possibility of injury to persons upon public streets from motor vehicles driven at a rapid rate of speed is much greater in certain congested portions of towns and cities than upon public highways, or generally upon other streets less frequented by the public. Greater care should be required of drivers of motor vehicles when passing, or in the vicinity of, public school buildings, churches, market places, and congested business districts, than in many other parts of the city. The legislature has, there-

fore, conferred authority upon cities and towns to limit the speed of motor vehicles entering the same, and upon the streets thereof. The purpose of the arrow upon the sign is to indicate to the driver of such vehicle the street, or portion thereof, upon which the speed is to be changed. The arrow placed upon the sign is designated to indicate the direction in which such reduction of speed is required. It may be that the defendant was in no wise misled by the failure of the officers of plaintiff to cause an arrow to be placed upon the sign in question, but the law must be given general application. The placing of an arrow upon signs displayed at highways entering cities and towns, and at points therein where a change is required in the speed of motor vehicles, is as much a part of the legislative requirement as that same shall have certain words, of sufficient size to be easily readable, inscribed thereon. The validity of ordinances enacted by municipal corporations, in exercise of the power conferred by the statute, depends upon a strict compliance with its requirements. The power which such bodies can exercise is only that which is delegated thereto by the legislature, and conditions imposed thereby are mandatory, and must be strictly followed. Local authorities have no discretion in the matter, and cannot say with what part of the statute they will comply, or what they will ignore.

It follows that, as the incorporated town of Decatur failed to comply with the terms and conditions imposed by the legislature as a condition precedent to the exercise of the authority delegated by Section 1571-m20, its ordinance is invalid, and cannot be enforced. The motion of defendant's counsel for a directed verdict based upon this ground should, therefore, have been sustained. The judgment of the court below must be, and is, therefore,—*Reversed.*

LADD, C. J., GAYNOR and SALINGER, JJ., concur.

PRESTON, J. (dissenting). I cannot agree to the conclusion reached by the majority. Conceding that the statute is mandatory, I think a substantial compliance with the statute is all that is required. We so held in *Pilgrim v. Brown,* 168 Iowa 177, construing this same section, and as to the location of the signs where the city or town line crosses the highway. In that case, the sign was located 500 feet from the line, and within the city. The same claim was made there as here: that the ordinance was void. It is true that was a negligence case, but we said:

"It is not altogether clear from the statute whether the legislature intended to make the validity of the ordinance depend upon the city's compliance with the requirement for signboards, or to relieve from the penalties of the ordinance such persons as might be misled or deceived by the absence of the prescribed warnings, or that the presumption of negligence attached to the driving of a motor car at a greater speed than the regulation allows should be applicable only in cases where the city has performed its duty in this respect. But if either of these several constructions be adopted, the result of the case in hand must be the same. The evident purpose of the provision for the display of signs at the entrance to the cities is to give warning to car drivers, that they may not unwittingly violate municipal regulations. They also, to some extent, tend to protect the general public in the use of the city streets, against the perils caused by the reckless or thoughtless operation of such vehicles. It cannot be supposed there was any legislative intent to make the validity of a municipal regulation of this character depend on the question whether a nice or accurate survey shall find all the several sign posts surrounding the city planted squarely upon the boundary line."

It seems to me the majority opinion requires too strict compliance, and is technical. The evidence shows that defendant was within the town, at the time he was speeding

his automobile. The signs in question informed the defend-
ant, as he approached the town, that he was to slow down
to 10 miles per hour, and that in that vicinity, in front
of him or behind him, was a town, by the name of Decatur
City. He knew it was not behind him, because he had just
passed that way. It would not require any great stretch
of imagination for him to know that he was approaching
the town of Decatur City, and that he was required to slow
down his speed. Furthermore, defendant is presumed to
know the law, and to know that the law required the city or
town to place signs at the city limits. When he saw the
sign in question, he knew it was at, or near, the corporate
line, and that he was either leaving or approaching the
town. I think the sign informed him that he was approach-
ing the town. It seems to me that there was a substantial
compliance with the statute, that the signs were a compli-
ance with the statute, and authorized the town to pass the
ordinance in question. The trial court, in the instructions,
after quoting the statute, said, among other things:

"The plaintiff has offered evidence to show that there
were signs on the main highways, at or near the corporate
line, with the words, 'Decatur City. Automobiles and Mo-
torcycles slow down to 10 miles per hour.' If the plaintiff
has proven beyond a reasonable doubt that there were signs
on the main highways, at or near the corporation line, which
could be readily read, containing the words, 'Decatur City.
Automobiles and Motorcycles slow down to 10 miles per
hour,' this would be a substantial compliance with the law,
and sufficiently so as to this requirement."

There is some suggestion in the majority opinion in
regard to the arrows and signs within the city or town,
giving notice of public schools and congested districts, where
a further change of speed may be required. Whether or not
this rule would apply where a person was approaching a
schoolhouse or the like, within a city or town where such

schoolhouse might not be so readily seen, we do not determine, because there is no such question in the case, nor even a suggestion of it. The only question in the case is whether the signs placed at the corporate line by the town constitute a substantial compliance with the statute. Questions might arise where a proper sign had been placed in the first instance, and blown down or destroyed, or where a sign within the city had been placed there after the passage of the ordinance; but it will be time enough to pass upon such questions when we come to them. I would affirm.

WEAVER, J., concurs in this dissent.

EVANS, J. I think that the statutory provision pertaining to the "arrow" indicating direction should be construed to apply only to signs erected within the city at points where the ordinances require a reduced speed. This is the only rational construction of the statute. No reason is conceivable why an arrow indicating direction should be posted at the outer limits of the city. I therefore join in the dissent.